**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | | |
|---|---|---|
| BRENDA FAITH CAMPBELL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:09-cv-04041-NKL |
| | ) | |
| MIDLAND FUNDING INC., et. al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# O R D E R

Pending before the Court is Defendant Trans Union, LLC's Motion to Dismiss [Doc. # 129]. For the reasons stated below, the Court denies this motion.

## I. Factual Background

This dispute involves two separate lawsuits filed by Plaintiff Campbell. In the first suit, Plaintiff filed a Complaint on August 27, 2008, under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* ("FCRA"), against Trans Union and two other credit reporting agencies. In that suit, Plaintiff alleged Defendant Trans Union negligently and wilfully violated the FCRA and that those violations resulted in the mixture of Plaintiff Campbell's credit file with the credit record of a "Brenda Faye Campbell" from Willard, Missouri (Case No. 08-4217-CV-C-NKL, hereinafter "*Campbell I*").

In the second suit, Plaintiff filed the present action on January 23, 2009, against Midland Funding, LLC, Midland Credit Management Inc., Kramer & Frank, and Brenda

Faye Campbell (hereinafter, "*Campbell II*"). In *Campbell II*, Plaintiff also alleges violations of the FCRA as well as violations of the Fair Debt Collection Practices Act, Malicious Prosecution, Defamation, Invasion of Privacy, and Conversion.

On July 31, 2009, Plaintiff filed her First Amended Complaint adding Trans Union as a defendant in the instant action. Plaintiff sought addition of Trans Union because she believed proceeding against Trans Union in a separate suit from the *Campbell II* Defendants created the risk of inconsistent and unjust outcomes in both *Campbell I* and *II*. *See Campbell II*, Doc. # 53. Trans Union was then voluntarily dismissed from *Campbell I* on September 3, 2009. *See Campbell I*, Doc. # 108.

## II. Discussion

### A. Statute of Limitations Defense

Trans Union argues Campbell's First Amended Complaint in *Campbell II* was filed outside the statute of limitations. Trans Union asserts the statute of limitations was not tolled while Trans Union was a party in *Campbell I* and therefore the case is out of time. The Court disagrees.

Statutes of limitations are designed to assure fairness to defendants. "Such statutes 'promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'" *Burnett v. N. Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965) (citing *Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348-349 (1944)).

Another purpose of the statute of limitations is to relieve the court of the burden of trying stale claims. *Burnett*, 380 U.S. at 428. The policy in favor of dismissing claims that are out-of-time "is frequently outweighed, however, where the interests of justice require vindication of the plaintiff's rights." *Id*. Several cases hold that when dismissal of an action for improper venue would result in the action being forever barred due to the statute of limitations, "the interest of justice" requires that statute of limitations be equitably tolled to allow the case to be tried on the merits. *Id.* at 430; *see, e.g.*, *Gold v. Griffith,* 190 F. Supp. 482 (N.D. Ind. 1960); *Dennis v. Galvanek*, 171 F. Supp. 115 (M.D. Pa. 1959); *Shultz v. McAfee*, 160 F. Supp. 210 (D. Me. 1958). Similarly, courts have tolled the statute of limitations "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period [...]. " *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

In *Burnett*, plaintiff brought an action under the Federal Employer's Liability Act ("FELA") in Ohio state court. 380 U.S. at 429. Plaintiff failed to file the action in federal court because he believed his state action was sufficient to vindicate his rights. *Id*. The state court was not the proper venue, however, and the matter was dismissed. Eight days later plaintiff filed the same claim in federal court. Defendant subsequently filed a motion to dismiss the federal claim arguing plaintiff's federal filing was out of time. The Supreme Court denied defendant's statute of limitations defense stating that defendant "could not have relied upon the policy of repose embodied in the limitation statute, for it

3

was aware that petitioner was actively pursuing his FELA remedy; in fact, respondent appeared specially in the Ohio court to file a motion for dismissal on grounds of improper venue." *Id*. at 430. The Court concluded the statute of limitations were tolled while the plaintiff's state suit was pending and therefore plaintiff's federal action was timely. *Id*. at 436. The Court explained that "to accept [defendant's] argument that the limitation provision is not tolled under the circumstances present here would do even greater violence to the policies underlying the limitation provision and the Act. It would produce a substantial nonuniformity by creating a procedural anomaly." *Id*. at 433.

Similarly, in *Billings v. Chicago R.I. & P.R. Co.*, plaintiff's FELA action was initially filed in state court within the appropriate statute of limitations. 581 F.2d 707 (8th Cir. 1978). The action was dismissed one month later for improper venue. Two months later, but after the statute of limitations had run, plaintiff filed the same action in federal court. The Eighth Circuit applied *Burnett* and held that the statute of limitation was tolled while the action was in state court; because the limitation period was tolled, the federal filing was in time. *Id*. at 710. The Circuit Court reasoned that tolling the statute of limitation was proper and met "the humane and remedial purpose" of the Act. *Id*. The court explained that defendant would not be prejudiced by the tolling because defendant had been alerted to the existence of a controversy concerning plaintiff's injury when plaintiff filed the state action. *Id*. at 711. The Court concluded that "the policy of repose is outweighed by the interests of justice served by allowing [plaintiff] the opportunity to

4

have his claim adjudicated." *Id*.

Here, to declare Plaintiff's claim is time-barred after Trans Union was added as a party only to prevent inconsistent judgments would not only be inequitable, but would set an unhealthy precedent for future cases. It is for this reason the Court rules the statute of limitation was tolled while Trans Union was a party in *Campbell I*. Trans Union has not claimed it will suffer any prejudice by being required to defend against Plaintiff's claim at this time; nor is any prejudice apparent to the court. *See Taliaferro v. Dykstra*, 388 F. Supp. 957, 962 (E.D. Va. 1975). Trans Union was not surprised by the action because it has been alerted to the existence of this controversy while it defended Plaintiff's allegations over the nine months they were party to *Campbell I*. *C.f. Johnson v. Railway Express Agency*, 421 U.S. 454, 467 (1975) (timely filing of employment discrimination charge under Title VII did not toll running of the limitation period applicable to Section 1981 action because plaintiff "slept on his Section 1981 rights."). Trans Union cannot now claim they had no notice of Plaintiff's claims or allegations against them, nor can they claim that the general purpose of preventing the prosecution of stale claims with dated evidence is at issue. *See Brooks-Ngwenya v. Indianapolis Public Schools*, No. 1:07cv067-SEB-JMS, 2008 WL 763200, *3 (S.D. Ind. 2008) ("the simple migration of the claim from the earlier case to this case did not cause the tolling effect of the initial assertion of the claim to be undone."). The Motion is denied on this point.

  **B.**  **Vague Allegations in the First Amended Complaint**

Trans Union argues Plaintiff's First Amended Complaint makes vague references to credit reports, disputes, and entities who may have gained access to Plaintiff's credit information but fails to give specifics about these items including who prepared such credit reports, when disputes were made and which entities may have gained access to Plaintiff's credit information. As a result, Trans Union argues these claims should be dismissed.

Under the federal notice pleading requirement, a plaintiff's complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must give notice of what the plaintiff's claim is. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Detailed factual allegations are not required, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level ...." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007). When ruling on a motion to dismiss, the factual allegations in the complaint are accepted as true, and the court must determine whether they show the pleader is entitled to relief. At this stage, the complaint is construed liberally in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp.* 514 F.3d 801, 806 (8th Cir. 2008). "The complaint must 'provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind.'"

*Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 347 (2005)).

These allegations are sufficient to state a claim under the FCRA under the notice-pleading standard. The facts alleged in Plaintiff's First Amended Complaint are substantially similar to the allegations in the *Campbell I* Complaint. In fact, many allegations in the First Amended Complaint are word-for-word identical to paragraphs from the *Campbell I* Complaint. *Compare Campbell I*, Doc. # 1 *with Campbell II*, Doc. # 53. Trans Union answered these allegations in *Campbell I* and since has conducted months of discovery on these allegations. *See Campbell I*, Doc. # 21. Trans Union also filed a Summary Judgment on these issues in *Campbell I.* To now say these statements are not specific enough to provide adequate notice to prepare a defense is not supported by Trans Union's actions in both *Campbell I* and *Campbell II.*

Finally, Trans Union argues that the First Amended Complaint contains references to "consumer disclosures" as opposed to consumer reports. Trans Union explains that a consumer disclosure is the document credit reporting agencies are required to disclose to a consumer at their request. A consumer report, on the other hand, is defined by the FCRA to be a communication from the credit reporting agency to a third party regarding the consumer's credit worthiness. Trans Union asserts that the FCRA's requirement for reasonable procedures in preparing consumer reports does not apply to disclosures. *See Hyde v. Hyberia Nat'l Bank*, 861 F.2d 446, 449 (5th Cir. 1988) ("The statute does not
7

allow suit against the credit agency for creating, possessing, or revealing to a consumer credit files containing erroneous information, but establishes a cause of action to redress specific injuries sustained by the consumer."). The Court determines this argument does not go to the sufficiency of Plaintiff's pleadings, but rather, her ability to prove causation or damages, as such, it is an argument more appropriately addressed at a later date.

## III. Conclusion

Accordingly, it is hereby ORDERED that Defendant Trans Union's Motion to Strike [Doc. # 129] is DENIED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: January 4, 2010  
Jefferson City, Missouri